JS 44  (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carol Sandloop and
Carl Sandloop w/h

**(b)** County of Residence of First Listed Plaintiff     Berks County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael Malvey, Esq.; Galfand Berger LLP
1835 Market Street, Philadelphia, PA 19103
215.665-1600

## DEFENDANTS

Roto-Rooter Services, CO, and Roto-Rooter Plumbing
& Water Cleanup

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Sean T. Stadelman, Esq., Stephen A. Sheinen, Esq.; Goldberg Segalla LLP
1700 Market Street, Suite 1418, Philadelphia, PA 19103
215. 519.6850

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
Plaintiff
- [ ] 2   U.S. Government
Defendant
- [ ] 3   Federal Question
*(U.S. Government Not a Party)*
- [x] 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for:

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment
& Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted
Student Loans
(Excludes Veterans)
- [ ] 153 Recovery of Overpayment
of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product
Liability
- [ ] 320 Assault, Libel &
Slander
- [ ] 330 Federal Employers'
Liability
- [ ] 340 Marine
- [ ] 345 Marine Product
Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle
Product Liability
- [x] 360 Other Personal
Injury
- [ ] 362 Personal Injury -
Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury -
Product Liability
- [ ] 367 Health Care/
Pharmaceutical
Personal Injury
Product Liability
- [ ] 368 Asbestos Personal
Injury Product
Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal
Property Damage
- [ ] 385 Property Damage
Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/
Accommodations
- [ ] 445 Amer. w/Disabilities -
Employment
- [ ] 446 Amer. w/Disabilities -
Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate
Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee -
Conditions of
Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure
of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards
Act
- [ ] 720 Labor/Management
Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical
Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement
Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration
Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal
28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated
New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets
Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff
or Defendant)
- [ ] 871 IRS—Third Party
26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC
3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and
Corrupt Organizations
- [ ] 480 Consumer Credit
(15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer
Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/
Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information
Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure
Act/Review or Appeal of
Agency Decision
- [ ] 950 Constitutionality of
State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original
Proceeding
- [x] 2 Removed from
State Court
- [ ] 3 Remanded from
Appellate Court
- [ ] 4 Reinstated or
Reopened
- [ ] 5 Transferred from
Another District
*(specify)*
- [ ] 6 Multidistrict
Litigation -
Transfer
- [ ] 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332

Brief description of cause:   Premises Liability

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
In excess of $50,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
November 3, 2021

SIGNATURE OF ATTORNEY OF RECORD
Stephen A. Sheinen

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 10/20)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: _____.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 3221 Eisenbrown Road, Reading, PA, 19605 _____

Address of Defendant: _____ 255 East 5th Street, Suite 2500, Cincinnati, Ohio 45202 _____

Place of Accident, Incident or Transaction: _____ April 25, 2020 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/03/2021 _____   /s/ Stephen A. Sheinen _____   61993 _____
_____   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
(Please specify): _____

**B.**   *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☑ 6. Other Personal Injury *(Please specify):* Premises liability
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
_____   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CAROL SANDLOOP, and CARL**                                 :   CIVIL ACTION NO.
**SANDLOOP w/h**                                              :
                                                             :
                                                             :
Plaintiffs,                                                  :
                                                             :
                                                             :
**V.**                                                       :
                                                             :
**ROTO-ROOTER SERVICES, CO. and**                            :
**ROTO-ROOTER PLUMBING & WATER**                             :
**CLEANUP**                                                  :
                                                             :
                                                             :
Defendants.                                                  :

## NOTICE OF REMOVAL AND COPIES OF ALL PROCESS AND PLEADINGS

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Roto-Rooter Services Company, incorrectly identified as Roto-Rooter Services, Co and Roto-Rooter Plumbing & Water Cleanup ("RRSC"), submits the following Notice of Removal from the Court of Common Pleas of the Commonwealth of Pennsylvania, County of Philadelphia, the Court in which the above-referenced matter is now pending, to the United States District Court for the Eastern District of Pennsylvania. In support of RRSC's Notice of Removal, it states as follows:

      1.     This action allegedly arises out of an April 25, 2020 slip and fall incident at 3221 Eisenbrown Road in Reading, Pennsylvania 19605. (*See* Complaint, attached hereto as Exhibit "A.")

      2.     Plaintiffs commenced this action on August 4, 2021 by filing a complaint in the Court of Common Pleas of the Commonwealth of Pennsylvania, County of Philadelphia, bearing docket number August Term 2021 No. 0366. (*Id.*)

3.     Plaintiffs allege that Plaintiff Carol Sandloop was injured when she slipped and fell down a staircase at the aforementioned location that "became coated in a clear, wet substance, believed and averred to be the antimicrobial disinfectant Defendants used to clean the floor, which created an unreasonable slipping hazard."  (*Id.* at ¶ 17).

4.     Plaintiffs allege that Defendants were negligent in allowing the aforementioned substance to remain on the staircase.

5.     Pursuant to 28 U.S.C. § 1446(a), RRSC attached copies of all process, pleadings and orders in the Philadelphia County Common Pleas Court case, served upon them, including: a true and correct copy of Plaintiff's Complaint, dated August 4, 2021.  (*Id.*)

## Timeliness of Removal

6.     RRSC was served with the Complaint less than 30 days ago.

7.     This Notice of Removal is being filed within thirty (30) days after service of Plaintiff's Complaint, and is therefore timely pursuant to 28 U.S.C. § 1446(b).

## Amount in Controversy

8.     A defendant's notice of removal need only include a "plausible allegation" that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(a)).

9.     "The amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Auto-Owners Ins. Co. v. Stevens & Ricci*, 835 F.3d 388, 401 (3d Cir. 2016)(quoting *Angus v. Shirley*, 989 F.2d 142, 146 (3d Cir. 1993)).

10.     Plaintiff seeks damages for a broken femur requiring surgery.  (*Id.* at ¶42(a)).

11.     Accordingly, based upon a reasonable reading of the rights being litigated, the amount in controversy exceeds $75,000, exclusive of interest and costs.

## Diversity of Citizenship

12.     According to the Complaint, Plaintiffs are residents of the Commonwealth of Pennsylvania residing at 3221 Eisenbrown Road in Reading, Pennsylvania 19605. (*Id.* at ¶ 1).

13.     RRSC is an Iowa corporation with a principal place of business at 255 East 5th Street, Suite 2500, Cincinnati, Ohio 45202.

14.     Plaintiffs sued Roto-Rooter Plumbing & Water Cleanup, which is a fictitious name, such that its citizenship shall be disregarded for purposes of determining whether there is diversity of citizenship.  28 U.S.C.  §1441(b)(1).

15.     Pursuant to 28 U.S.C. § 1332 (c)(1), full diversity exists among all parties in this action because Plaintiff is a citizen of Pennsylvania and RRSC is a citizen of a state other than Pennsylvania.

16.     Since no Defendant is a citizen of the forum state, removal is not precluded by 28 U.S.C. §1441(b)(2).

## Plea for Removal

17.     Insofar as the amount in controversy exceeds $75,000.00 and full diversity exists between the parties, removal to this Court is proper pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a).

18.     Written notice is being given to all parties and the Clerk of the Court of Common Pleas of the Commonwealth of Pennsylvania, County of Philadelphia, that this Notice of Removal is being filed with this Court.

3

**WHEREFORE**, Defendant Roto-Rooter Services Company, incorrectly identified as Roto-Rooter Services, Co. and Roto-Rooter Plumbing & Water Cleanup, respectfully requests that the entire state court action under Docket No. August Term 2021, No. 0366 currently pending in the Court of Common Pleas of the Commonwealth of Pennsylvania, County of Philadelphia, be removed to this Court for all further proceedings.

**GOLDBERG SEGALLA LLP**

/s/ *Stephen A. Sheinen*
SEAN T. STADELMAN, ESQUIRE
STEPHEN A. SHEINEN, ESQUIRE
Attorney ID Nos. 201636/61993
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
(P): 267-519-6800; (F) 267-519-6801
sstadelman@goldbergsegalla.com
ssheinen@goldbergsegalla.com
Attorneys for Defendant
Roto-Rooter Services Company,
incorrectly identified as Roto-Rooter Services,
Co. and Roto-Rooter Plumbing & Water
Cleanup

Dated: 11/3/2021

4

## CERTIFICATE OF SERVICE

I, Stephen A. Sheinen, hereby certify that this 3rd day of November 2021, a true and correct copy of the foregoing Notice of Removal was served via the Court's ECF System upon the following:

Michael P. Malvey, Esquire
Galfand Berger, L.L.P.
1835 Market Street, Suite 2710
Philadelphia, PA 19103

**GOLDBERG SEGALLA LLP**

Date:    11/3/2021

*STEPHEN A. SHEINEN*

Stephen A. Sheinen, Esquire
*Attorneys for Defendant*
*Roto-Rooter Services Company,*
*Incorrectly identified as*
*Roto-Rooter Services, Co. and*
*Roto-Rooter Plumbing & Water*
*Cleanup*

# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **AUGUST 2021**   **000366** |
| E-Filing Number: 2108007475 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CAROL SANDLOOP | ROTO-ROOTER SERVICES, CO |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3221 EISENBROWN ROAD <br> READING PA 19605 | 1001 DAWSON DRIVE <br> NEWARK DE 19713 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CARL SANDLOOP | ROTO-ROOTER PLUMBING & WATER CLEANUP |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3221 EISENBROWN ROAD <br> READING PA 19605 | 11 NORTH 5TH STREET SUITE 300 <br> READING PA 19601 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 2 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal <br> [ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less <br> [X] More than $50,000.00 | [ ] Arbitration <br> [X] Jury <br> [ ] Non-Jury <br> [ ] Other: | [ ] Mass Tort <br> [ ] Savings Action <br> [ ] Petition | [ ] Commerce <br> [ ] Minor Court Appeal <br> [ ] Statutory Appeals | [ ] Settlement <br> [ ] Minors <br> [ ] W/D/Survival |

**CASE TYPE AND CODE**

2S - PREMISES LIABILITY, SLIP/FALL

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED** <br> **PRO PROTHY** <br><br> AUG **04** 2021 <br><br> **S. RICE** | IS CASE SUBJECT TO <br> COORDINATION ORDER? <br>   YES      NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: CAROL SANDLOOP , CARL SANDLOOP
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| MICHAEL MALVEY | GALFAND BERGER LLP <br> 1835 MARKET STREET <br> SUITE 2710 <br> PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)665-1600 | (215)564-2262 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 89186 | mmalvey@galfandberger.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| MICHAEL MALVEY | Wednesday, August 04, 2021, 01:55 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**GALFAND BERGER, L.L.P.**
BY:  Michael P. Malvey
ID:  PA 81896
1835 Market Street, Suite 2710
Philadelphia, Pennsylvania 19103
(215) 665-1600
mmalvey@galfandberger.com

<u>NOTICE TO PLEAD</u>

**TO: All Defendants**
You are hereby notified to file a written response to the enclosed
Complaint within twenty (20) days from the date of service hereof or
a judgment may be entered against you.

/S/ Michael P. Malvey
**Attorney for Plaintiff**

---

**CAROL SANDLOOP, and**
**CARL SANDLOOP** w/h
3221 Eisenbrown Road,
Reading, PA 19605

Plaintiffs

vs.

**ROTO-ROOTER SERVICES, CO.**
1001 Dawson Drive,
Newark, DE 19713
and
**ROTO-ROOTER PLUMBING &**
**WATER CLEANUP**
11 North 5th Street, Suite 300,
Reading, PA 19601

Defendants

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

CIVIL TRIAL DIVISION

NO.

**JURY TRIAL DEMANDED**

**THIS IS NOT AN ARBITRATION CASE.**

**AN ASSESSMENT OF DAMAGES**
**HEARING IS REQUIRED.**

---

<u>**NOTICE**</u>

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107

1

(215) 238-6300

## AVISO

Le han demandado en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo de la demanda y notificacion para asentar una comparesencia escrita en persona o por su abogado y archivar con la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte puede continuar la demanda en contra suya y puede entrar una decision contra usted sin aviso o notificacion adicional por la cantidad de dinero de la demanda o por cualquier reclamacion hecha por el demandante.  Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE DE LLEVAR ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE PARA PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITO ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASSOCIACION DE ABOGADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-6300

2

## COMPLAINT

1.      Plaintiffs Carol Sandloop (referenced herein individually as "Plaintiff") and Carl Sandloop, wife and husband, are adult individuals and residents of the Commonwealth of Pennsylvania, residing therein at 3221 Eisenbrown Road, Reading, PA 19605 (hereinafter, the "subject premises").

2.      At all times relevant, Plaintiffs resided in the subject premises with their daughter, Karen Sandloop and son-in-law Scott Boyer, the four of whom jointly owned the premises.

3.      Defendant Roto-Rooter Services Co. is a corporation or other business entity organized and existing under the laws of the State of Delaware with its corporate office located at 1001 Dawson Drive, Newark, DE 19713.

4.      Defendant Roto-Rooter Plumbing & Water Cleanup is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with an office located at 11 North 5th Street, Suite 300, Reading, PA 19601.

5.      Defendant Roto-Rooter Services Co. and Defendant Roto-Rooter Plumbing & Water Cleanup may hereinafter be referred to, individually and collectively, as "Roto Rooter Defendants" in this Complaint.  All averments referencing the "Roto Rooters Defendants" apply with equal force and effect against each individual Defendant as if set forth fully and completely against each individually and separately.

6.      At all times relevant, Defendants, through their agents, employees, servants, and/or workmen, was engaged in the business of providing water-damage mitigation services, including the cleaning and drying of water-affected areas, to customers within the Commonwealth of Pennsylvania and Philadelphia county, and deriving compensation therefrom.

7.      The events giving rise to this action, described herein, occurred on April 25, 2020, in Reading, Pennsylvania.

8.     Venue in Philadelphia County is proper in that, at all times relevant, Defendants were engaged in the business of providing plumbing and water-damage mitigation services to customers within the City of Philadelphia and deriving compensation therefrom.

9.     All events mentioned herein occurred on or about April 25, 2020 at the subject premises, as Defendants were performing water-damage mitigation services, including cleaning and drying the floor, in the basement of the subject premises.

10.     On April 24, 2020, Defendants performed plumbing work in the basement of the subject premises to repair a clog and leak that had previously flooded the basement.

11.     Plaintiff's daughter, Karen Sandloop, contracted with Defendants on April 25, 2020, to clean and dry the basement floor of the water and dirt that was present due to the recent flood. See a true and correct copy of their agreement is attached as Exhibit "A."

12.     Under the contract, Defendants agreed to perform cleaning and drying services in the basement of the subject premises, including but not limited to "moving/cleaning/disposal of contents," "pressure clean the floor," "apply antimicrobial," and "provide air movers and dehumidifiers." See Exhibit "A."

13.     At all times relevant, Defendants, through their agents, servants, workmen, and/or employees, undertook to perform drying and cleaning services in the basement of the subject premises with reasonable, proper, ordinary and/or due care, and in accordance with the April 25, 2020 contract.

14.     At all times relevant, Defendants had a duty to perform their water-damage mitigation services with reasonable, proper, ordinary and/or due care, so as to prevent the creation of dangerous conditions.

15.     At all times relevant, Defendants had a duty warn others about any dangerous conditions created by their undertaking of work in the basement of the subject premises.

16.     On and prior to April 25, 2020, there existed a tile staircase with a handrail and five stairs that leads to the basement of the subject premises.

17.     On April 25, 2020, after Defendants undertook to perform cleaning and drying services in the basement, the top step of the aforesaid staircase became coated in a clear, wet substance, believed and averred to be the antimicrobial disinfectant Defendants used to clean the floor, which created an unreasonable slipping hazard.

18.     Upon information and belief, Defendants knew or should have known about the wet and slippery condition, which Defendants, through their agents, employees, servants and/or workmen, created, on the top step of the staircase.

19.     On April 25, 2020, Plaintiff was walking toward the subject staircase to look for her cat, while Defendants' agents, employees, servants, and/or workmen were working in the basement.

20.     Upon arriving at the top of the stairs, Plaintiff noticed two of Defendants' employees working in the basement and called out for the cat.

21.     Defendants did not place any warnings or barriers at the door to the basement to alert Plaintiff to where work was being performed.

22.     Upon seeing Plaintiff approaching the top of the stairs, Defendants' agents, employees, servants, and/or workmen did not advise or warn Plaintiff of the condition of the stairs

23.     After briefly interacting with Defendants' agents, employees, servants, and/or workmen, Plaintiff placed her foot on the top step of the staircase, when her foot suddenly

slipped on the wet and slippery condition that the Defendants created, causing her to fall down the stairs and break her femur, as well as other injuries, described herein.

24.     Immediately after the fall, Plaintiff was taken via ambulance to Reading Hospital, where she received surgery on April 27, 2020 to repair the broken femur, caused by Defendants' negligence, as described herein.

25.     At all times relevant on April 25, 2020, Plaintiff was proceeding cautiously and using due care for her own safety under the circumstances, including but not limited to holding the handrail as she attempted to traverse the stairs to the basement.

26.     At no time prior to her fall was Plaintiff aware, or had reason to know, that the top step would be wet and/or coated with a slippery substance.

27.     For an unknown period of time on April 25, 2020, Defendants permitted the aforesaid wet and slippery condition to remain on the top step of the staircase, and knew or should have known about its existence.

28.     Prior to Plaintiff's fall, Defendants knew or should have known that the wet and slippery top step of the staircase was a dangerous slipping hazard for anybody traversing the staircase.

29.     Prior to Plaintiff's fall, Defendants knew or should have known that anybody walking onto the staircase might encounter the wet and slippery top step and could suffer serious injuries.

30.     Defendants, prior to the time of Plaintiff's fall, had the opportunity to discover the wet and slippery condition on the top step and take necessary measures to prevent Plaintiff or others from encountering it.

31.     The wet and slippery condition on the top step of the staircase could have been discovered upon minimal inspection and cleaned and/or dried by Defendants at little-to-no cost.

6

32.     Defendants should have dried the wet and slippery condition from the top step of the staircase before moving their work to other areas of the basement.

33.     Defendants should have pointed air movers at the staircase to dry the wet and slippery condition existing on the top step, and to warn others, like Plaintiff, that the staircase was wet and slippery, before to moving their work to other areas of the basement.

34.     Defendants should have pointed air movers at the wet and slippery condition on the top step of the staircase, which they created, to dry the dangerous condition, as they continued to clean other areas of the basement.

35.     Defendants should have placed a visual warning on or near the top step of the staircase to warn others, including Plaintiff, that the top step of the staircase was wet and slippery.

36.     Defendants should have placed a physical barrier, cone, sign, or caution tape in front of the top step of the staircase to warn of the dangerous condition and prevent others, like Plaintiff, from encountering the wet top step.

37.     Prior to Plaintiff's fall, as Plaintiff stood at the top of the stairs and called out for her cat and interacted with Defendants' agents, employees, servants, and/or workmen, at which time Defendants' agents, employees, servants, and/or workmen knew or should have known that Plaintiff may attempt to traverse the staircase on which Defendants created this wet and slippery condition.

38.     Defendants should have verbally warned Plaintiff about the wet and slippery condition of the top step, which they created, while Defendants interacted with Plaintiff as she stood at the top of the stairs.

7

39.     Defendants' failure to inspect, clean, remove, dry and/or warn about the wet and slippery condition on the top step of the staircase was the direct and proximate cause of Plaintiff's injuries and resulting damages.

40.     At all times relevant, Defendants failed to act with reasonable, proper, ordinary and/or due care in causing Plaintiff's injuries.

41.     The April 25, 2020 incident was caused solely by Defendants' negligence, and was due in no part whatsoever to Plaintiff, who, at all times relevant, was acting with reasonable, proper, ordinary and/or due care under the circumstances.

42.     On April 25, 2020, as a direct and proximate result of Defendants' negligence, Plaintiff Carol Sandloop sustained painful and disabling personal injuries and damages, including but not limited to:

   a.   Physical injuries to various parts of her body, including but not limited to a broken femur which required surgery, and other injuries, the fullest extent of which are not yet known, some or all of which may be permanent in nature;

   b.   Great pain, suffering, and loss of enjoyment of life's pleasures, past and future, emotional upset, mental anguish, humiliation, embarrassment, and loss of well-being;

   c.   Scarring and disfigurement from her injuries and surgical procedure;

   d.   Out-of-pocket expenses, including but not limited to $6,000 for a Stair Lift prescribed by Plaintiff's doctor; and

   e.   Hospital, medical, and rehabilitative expenses, past and future.

## COUNT I – NEGLIGENCE
## PLAINTIFFS V. ALL DEFENDANTS

43.     Plaintiffs allege and incorporate by reference all of the preceding paragraphs as though set forth fully at length herein.

44.     Plaintiffs' injuries and damages were caused by the negligence and carelessness of Roto Rooter Defendants, *inter alia*, consisting of the following acts or omissions:

a.   Saturating the top step of a tile staircase with water, antimicrobial chemicals or other slippery substances without taking any action to warn others of the dangerous condition or remove the dangerous condition;

b.   Failing to dry and/or remove the wet and slippery conditions present on the top step of the staircase to the basement;

c.   Permitting the wet and slippery conditions to remain on the top step of the staircase;

d.   Creating the wet and slippery condition on the top step and failing to remove and/or dry it;

e.   Negligently undertaking to clean and dry the tile floor and stairs of the subject premises;

f.   Negligently undertaking to provide a dry floor for Plaintiff to walk on;

g.   Failing to properly inspect the staircase for remaining wet and slippery conditions after saturating the staircase with water and antimicrobial chemicals (or other liquids);

h.   Failing to take any action to remedy the wet and slippery condition present on the staircase;

i.   Failing to place a physical barrier, cone, sign, or caution tape in front of the top step of the staircase to warn of the dangerous condition and prevent others, like Plaintiff, from encountering the wet top step;

j.   Failing to establish and implement policies and procedures for the inspection and removing of any slippery conditions present on the stairs leading to the working area;

k.  Failing to enforce policies and procedures for the inspection and removal of wet and slippery conditions on the stairs leading to the working area;

l.  Failing to provide adequate warnings to notify Plaintiff of the existence of the wet and slippery condition present on the top step of the staircase;

m.  Failing to verbally warn Plaintiff of the existence of the wet and slippery condition when Plaintiff was standing at the top of the staircase;

n.  Failing to establish and implement policies and procedures for their employees, agents, servants, and/or workmen to verbally warn others, like Plaintiff, of the dangerous conditions they created, in the absence of written warnings;

o.  Failing to enforce policies and procedures for their employees, agents, servants, and/or workmen to verbally warn others, like Plaintiff, of the dangerous conditions they created, in the absence of written warnings;

p.  Failing to place visual warnings on or near the top step of the staircase to warn Plaintiff of the dangerous conditions on the staircase;

q.  Failing to place barriers to prevent Plaintiff or other individuals in the home from physically entering the work area;

r.  Failing to establish and implement policies and policies for their employees, agents, servants, and/or workmen to place visual warnings of the dangerous conditions they created;

s.  Failing to enforce policies and procedures for their employees, agents, servants, and/or workmen to verbally warn others, like Plaintiff, of the dangerous conditions they created;

t.   Failing to appreciate the dangers associated with leaving a wet and slippery condition on the top step of a staircase and to take any action whatsoever to mitigate the dangerous condition;

u.   Failing to take steps to prevent the existence of wet and slippery conditions on the staircase;

v.   Increasing the risk of harm to Plaintiff through their actions or inactions;

w.   Failing to exercise the proper and adequate care necessary under the circumstances; and

x.   Negligence at law and in fact, as will be further revealed through discovery.

**WHEREFORE**, Plaintiffs demand compensatory damages against all Defendants, jointly and severally, in a sum that exceeds Fifty Thousand ($50,000.00) Dollars, plus costs, interest and all damages available under Pennsylvania law.

## COUNT II – LOSS OF CONSORTIUM
## PLAINTIFF CARL SANDLOOP V. ALL DEFENDANTS

45.   Plaintiffs repeat and incorporate by reference every one of the preceding paragraphs with the same force and effect as if fully set forth herein.

46.   On April 25, 2020, Plaintiff Carl Sandloop was married to Plaintiff Carol Sandloop.

47.   In the event that Plaintiff Carol Sandloop prevails on any of her causes of action against Defendants, Plaintiff Carl Sandloop is entitled to be compensated for his loss of consortium as a result of his wife's accident and injuries.

48.   As a direct and proximate result of Plaintiff Carol Sandloop's accident and injuries, Plaintiff Carl Sandloop sustained the following injuries and damages:

a.   Loss of services, society, and conjugal fellowship of Plaintiff Carol Sandloop; and

b.  Loss of Plaintiff Carol Sandloop's assistance and earnings.

**WHEREFORE**, Plaintiffs demand compensatory damages against all Defendants,

jointly and severally, in a sum that exceeds Fifty Thousand ($50,000.00) Dollars, plus costs,

interest and all damages available under Pennsylvania law.

Respectfully Submitted,

**GALFAND BERGER, L.L.P.**

BY: _____

.vilCHAEL P. MALVEY, ESQUIRE
**Attorney for Plaintiff**
Attorney ID: PA 81896
1835 Market Street, Suite 2710
Philadelphia, PA 19103
mmalvey@galfandberger.com
215-665-1600

Dated: 8-4- 2021

## **VERIFICATION**

be first signed, having read the attached pleading, verifies that the within pleading is based on information furnished to counsel, obtained when information has been gathered by counsel in the course of this lawsuit. The language of the pleading is that of counsel and not of signer. Signer verifies that he has read the within pleading and that it is true and correct to the best of signer's knowledge, information and belief to the extent that the contents of the pleading are that of counsel, verifier has relied upon counsel in taking this verification relies on the oath is made subject to the penalties set by Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

# EXHIBIT 'A'



DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615

Claim #: A00002568420



**Roto-Rooter Services Company**
Water Restoration Service Work Order/Invoice
1001 DAWSON DR
NEWARK, DE 19713
(302) 454-9854
HIC #117264; Institute of Inspection, Cleaning and Restoration Certified (IICRC)

**SEE BINDING TERMS IN WATER MITIGATION AGREEMENT**

**WATER RESTORATION**

| DATE OF SERVICE | LOCATION |
|---|---|
| 04/25/2020 | NEWARK |
| INVOICE NO. | |
| 75 | 21164057 |

Federal ID #   42 0499300

| Customer Name | Service Address | City, State ZIP |
|---|---|---|
| SCOTT BOYER | 3221 EISENBROWN RD | READING, PA 19605-1409 |
| Phone | Billing Address (if different from service address) | City, State ZIP |
| 610-804-3548 | | |

**Roto-Rooter hereby proposes to furnish all materials and labor necessary for the completion of:**
(Include make and model of materials and description of labor and state anticipated contingencies that would materially alter the estimated completion date.)
The approximate starting date is 04/25/2020 _____ and the approximate completion date is 04/25/2020. Neither date is guaranteed.
Unexpected conditions or problems could cause delays. A definite completion date is not of the essence. Subject to the Water Mitigation Agreement,
we will perform the following tasks in affected areas where needed. We may not perform all tasks in all rooms. Affected rooms and tasks include:

| AFFECTED ROOMS | Basement | | | |
|---|---|---|---|---|

Move furniture so that work can be performed.

Provide protection to prevent cross contamination.

Moving/Cleaning/Disposal of Contents.

Pressure clean the floor.

Apply antimicrobial.

Provide Air movers and Dehumidifiers.

Perform work outside of normal business hours.

Roto-Rooter will perform the work described above and supply all required materials. The scope of work may vary
depending on what we encounter, including longer drying times and moisture that cannot be detected initially.
If the scope expands, we will specify the changes for your approval below. Unless a dollar amount is specified, our
charges will be based on the industry standard "Xactimate" software pricing system applied to the work we actually perform. We estimate the total price we
charge will be between $ 2,000.00 and $ 4,000.00, but the actual price will be based on our actual work and could exceed that estimate.

**TOTAL** $ Per Xactimate

Customer will make payment as follows:
- _____ % of the cost ($_____) upon completion of the first day of work. [ ] Cash  [ ] Credit Card  [ ] Check #_____  [ ] Financing_____
  **If the job exceeds $1,000 and is performed at a Pennsylvania private residence, the deposit must not exceed 1/3 of the total price.**
- _____ % of the cost ($_____) upon completion of Roto-Rooter's work. [ ] Cash  [ ] Credit Card  [ ] Check #____  [ ] Financing_____
- As described in the Water Mitigation Agreement, if Customer has insurance coverage and intends to make a claim to its carrier, any additional amounts owed to Roto-Rooter will be due upon the earlier of Customer's receipt of the insurance settlement payment or 60 days after final completion of Roto-Rooter's work.

**Customer may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the notice of cancellation provided for an explanation of this right.**

**WORK ORDER AUTHORIZATION Customer authorizes the services described above and agrees to pay the amounts indicated. The parties have signed a separate Water Mitigation Agreement, and they agree that this Work Order/Invoice is governed by the terms of that agreement.**

| _Karen Sandloop_ | SCOTT BOYER | 04/25/2020 |
|---|---|---|
| Customer Signature | Printed Name | Date |
| _Signed_ | Robert Hannon | 1641 |
| Estimator Signature | Printed Name | Tech Number |

Changes in scope of work, if applicable.

**CHANGE ORDER AUTHORIZATION Customer authorizes the additional work described above and agrees to pay the amounts indicated.**

**REVISED TOTAL** $

| | | |
|---|---|---|
| Customer Signature | Printed Name | Date |
| Estimator Signature | Printed Name | Tech Number |

**INITIAL WORK ACKNOWLEDGEMENT**

_SB_ Customer acknowledges that Roto-Rooter performed water extraction services as necessary and removed damaged property from the premises.

_____ Customer acknowledges that Roto-Rooter performed water extraction services as necessary and _did not_ remove damaged property from the premises.

Customer confirms that Roto-Rooter performed the work indicated above to the customer's satisfaction.

| _Scott Boyer_ | SCOTT BOYER | 04/25/2020 |
|---|---|---|
| Customer Signature | Printed Name | Date |

Rev. 6/18

DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615

## Emergency Work Authorization

04/25/2020
_____   Date of Transaction

You, the buyer, having initiated the contract for the goods and services of Roto-Rooter, the seller, for the remediation of a bona fide emergency hereby authorize the seller to immediately proceed with the delivery of goods or the performance of services necessary to remedy the bona fide emergency. By providing the seller with this authorization, you agree to make full payment for the goods or services provided. You agree not to exercise the rights afforded you by the Unfair Trade Practices and Consumer Protection Law to cancel the contract within three business days from the above date. You, the buyer, attest that the following estimate is an accurate description of the goods and services which will be provided by the seller for the correction of the bona fide emergency.

04/25/2020
_____         Karen Sandloop
(Date)                                         (Buyer's Signature)

## Roto-Rooter

1001 Dawson Dr
Newark De 19713
Tax ID 42-0499300

| | | | | |
|---|---|---|---|---|
| Insured: | Scott Boyer | | Home: | (610) 804-3548 |
| Property: | 3221 Eisenbrown Rd | | | |
| | Reading, PA 19605 | | | |

| | | | |
|---|---|---|---|
| Estimator: | Timothy Craven IICRC  205572  WRT/ASD/AMRT | Business: | (302) 454-9854 x 23001 |
| Position: | Water Restoration Manager | E-mail: | timothy.craven@rrsc.com |
| Company: | Roto Rooter | | |
| Business: | 1001 DAWSON DRIVE | | |
| | NEWARK, DE 19713 | | |

| | | | | |
|---|---|---|---|---|
| **Claim Number:** | A00002568420 | **Policy Number:** | **Type of Loss:** | Water Damage |

| | | | |
|---|---|---|---|
| Date of Loss: | 4/25/2020 10:30 AM | Date Received: | |
| Date Inspected: | | Date Entered: | 4/27/2020 10:55 AM |

| | |
|---|---|
| Price List: | PARE8X_FEB20 |
| | Restoration/Service/Remodel |
| Estimate: | BOYER_21164057 |

Dear Scott Boyer,

   We are sorry to hear about your Water Damage loss. Attached is an estimate for the work performed on your home for the Water Mitigation. The total is $3,889.00. If you have any questions please contact our office.
The Loss Originated in the basement.
We deemed the loss to be Category 3 and Class 3. Due to documented elevated moisture content, structural drying services were provided. Equipment to facilitate drying was placed on 04/25/2020 and removed after a dry standard was achieved and documented.
IICRC Guidelines protocols were followed in the services rendered and in preparation of this estimate. Please note the Policyholder  has signed an authorization to start work and a certificate of satisfaction for water mitigation services rendered. All signed documents are attached. Please make all checks payable to Roto-Rooter Services Company, and mail said check to the address noted at the top of this cover page.

Timothy Craven
IICRC 205572 WRT/ASD/AMRT
Water Restoration Manager
Roto-Rooter Services Company
Wilmington Delaware #075



### Roto-Rooter

1001 Dawson Dr
Newark De 19713
Tax ID 42-0499300

**BOYER_21164057**
**Main Level**

Main Level

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1.  Emergency service call - after business hours | 1.00 EA @ | 193.68 = | 193.68 |
| 2.  Add for personal protective equipment - Heavy duty | 6.00 EA @ | 18.82 = | 112.92 |
| 3 techs * 2_changes. | | | |
| 3.  Respirator cartridge - HEPA & vapor & gas (per pair) | 4.00 EA @ | 26.29 = | 105.16 |
| 1 pair per respirator used on job. | | | |
| 4.  Respirator - Full face - multi-purpose resp. (per day) | 3.00 DA @ | 7.61 = | 22.83 |
|  techs on job. | | | |
| 5.  Respirator - Half face - multi-purpose resp. (per day) | 1.00 DA @ | 1.67 = | 1.67 |
| Per state law it is required for all personnel to wear a mask. This is to account for the sales representative who went to this call to set up the claim and inspect the loss prior to the start of the job. | | | |
| 6.  Add for HEPA filter (for negative air exhaust fan) | 0.50 EA @ | 184.54 = | 92.27 |
| 7.  Haul debris - per pickup truck load - including dump fees | 1.00 EA @ | 134.50 = | 134.50 |
| 8.  Protect - Cover with plastic - after hours | 165.00  SF @ | 0.33 = | 54.45 |
| 9.  Content Manipulation charge - per hour - after hours | 1.50 HR @ | 57.81 = | 86.72 |
| 3 techs * .5 hours. | | | |

| Basement | | | Height: 8' |
|---|---|---|---|
| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
| 10.  Water extract from hard surf flr - Cat 3 wtr - after hours | 350.00  SF @ | 1.12 = | 392.00 |
| Gross clean / initial extraction. | | | |
| 11.  Apply plant-based anti-microbial agent to the surface area - after hrs | 350.00  SF @ | 0.32 = | 112.00 |
| Pre - Treatment. | | | |
| 12.  Clean with pressure/chemical spray - Heavy | 350.00  SF @ | 0.42 = | 147.00 |
| Detailed cleaning and pressure washing. | | | |
| 13.  Water extract from hrd surf flr - Cat 2 wtr - after hours | 350.00  SF @ | 0.59 = | 206.50 |
| Final extraction after detailed cleaning and pressure washing to remove excess water to increase drying time. | | | |
| 14.  Apply plant-based anti-microbial agent to the surface area - after hrs | 350.00  SF @ | 0.32 = | 112.00 |
| Final treatment after detailed cleaning to floor and walls. | | | |
| 15.  Air mover (per 24 hour period) - No monitoring | 18.00 EA @ | 25.86 = | 465.48 |
|  air movers x  days. | | | |
| 16.  Negative air fan/Air scrubber (24 hr period) - No monit. | 3.00 DA @ | 72.66 = | 217.98 |
| 17.  Dehumidifier (per 24 hour period) - Large - No monitoring | 3.00 EA @ | 72.55 = | 217.65 |
|  DEHU for  days each. | | | |
| 18.  Equipment decontamination charge - HVY, per piece of equip | 6.00 EA @ | 43.90 = | 263.40 |

**Roto-Rooter**

1001 Dawson Dr
Newark De 19713
Tax ID 42-0499300

### CONTINUED - Basement

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| Includes: Charge for wiping down equipment, germicide, and labor. | | | |
| Reference: IICRC S500 3rd Edition standards. | | | |
| Note: Labor cost to wash/wipe down contaminated equipment that may need heavy scrubbing and/or excessive cleaning.  Per piece of equipment. | | | |
| Decontamination for 50ft of hoses (x2) for extraction and pressure wash hoses, truck mount, filters, wand, tools, DEHU and Air scrubber | | | |
| 19.  Equipment decontamination charge - per piece of equipment | 7.00 EA @ | 27.75 = | 194.25 |
| Due to COVID-19 concerns during this crisis all equipment including air movers and power box are being cleaned and wiped down with Microbial to help protect our clients.  This is to help prevent the possible cross contamination from one loss to the next and help do our part in preventing the further spread of this virus. | | | |
| 20.  Equip. setup, take down & monitoring - after hrs | 4.50 HR @ | 69.88 = | 314.46 |
| 21.  Equipment setup, take down, and monitoring (hourly charge) | 4.50 HR @ | 46.54 = | 209.43 |

## Grand Total Areas:

| | | |
|---|---|---|
| 810.67  SF Walls | 641.77  SF Ceiling | 1,452.44  SF Walls and Ceiling |
| 641.77  SF Floor | 71.31  SY Flooring | 101.33  LF Floor Perimeter |
| 0.00  SF Long Wall | 0.00  SF Short Wall | 101.33  LF Ceil. Perimeter |
| 641.77  Floor Area | 675.99  Total Area | 810.67  Interior Wall Area |
| 936.00  Exterior Wall Area | 104.00  Exterior Perimeter of Walls | |
| 0.00  Surface Area | 0.00  Number of Squares | 0.00  Total Perimeter Length |
| 0.00  Total Ridge Length | 0.00  Total Hip Length | |



**Roto-Rooter**

1001 Dawson Dr
Newark De 19713
Tax ID 42-0499300

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 3,656.35 |
| Cleaning Mtl Tax | 25.04 |
| Subtotal | 3,681.39 |
| Cleaning Sales Tax | 207.61 |
| **Replacement Cost Value** | **$3,889.00** |
| **Net Claim** | **$3,889.00** |

Timothy Craven IICRC  205572  WRT/ASD/AMRT
Water Restoration Manager

**Roto-Rooter**

1001 Dawson Dr
Newark De 19713
Tax ID 42-0499300

### Recap of Taxes

| | Material Sales Tax (6%) | Cleaning Mtl Tax (6%) | Cleaning Sales Tax (6%) | Clothing Acc Tax (6%) | Manuf. Home Tax (6%) | Storage Rental Tax (6%) | Dryclean/Laundry Tax (6%) |
|---|---|---|---|---|---|---|---|
| **Line Items** | | | | | | | |
| | 0.00 | 25.04 | 207.61 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | | |
| | **0.00** | **25.04** | **207.61** | **0.00** | **0.00** | **0.00** | **0.00** |

BOYER_21164057



**Roto-Rooter**

1001 Dawson Dr
Newark De 19713
Tax ID 42-0499300

## Recap by Room

**Estimate: BOYER_21164057**

| | | |
|---|---:|---:|
| **Area: Main Level** | 804.20 | 21.99% |
| Basement | 2,852.15 | 78.01% |
| Area Subtotal: Main Level | 3,656.35 | 100.00% |
| **Subtotal of Areas** | 3,656.35 | 100.00% |
| **Total** | 3,656.35 | 100.00% |

**Roto-Rooter**

1001 Dawson Dr
Newark De 19713
Tax ID 42-0499300

## Recap by Category

| Items | Total | % |
|---|---:|---:|
| CLEANING | 147.00 | 3.78% |
| CONTENT MANIPULATION | 86.72 | 2.23% |
| GENERAL DEMOLITION | 134.50 | 3.46% |
| WATER EXTRACTION & REMEDIATION | 3,288.13 | 84.55% |
| Subtotal | 3,656.35 | 94.02% |
| Cleaning Mtl Tax | 25.04 | 0.64% |
| Cleaning Sales Tax | 207.61 | 5.34% |
| Total | 3,889.00 | 100.00% |



Main Level

Basement

25' 11"

25' 3"

25' 5"

26' 1"

N

Main Level





Ticket Number:  21164057

## CONTACT FORM

Call Taken By:  ROBERT HANNON          Date:  04/24/2020          Time:  10:33 PM

Customer Name:  SCOTT BOYER

Caller Type:  Owner

Contact Name at Loss Site:  SCOTT BOYER

Location of Loss:  3221 EISENBROWN RD

City:  READING          State:  PA          Zip:  196051409

Phone at Loss Site:  (610) 804-3548          Alternative Phone:

Type of Loss:  Water

Source:  Msl          When:  04/25/2020 @ 12:00 AM

Explain:  Msl overflow

Category of Loss:  3          Class of Loss:  2

Areas Affected:  Basement

Insurance Company:  Erie insurance          Phone:

Insurance Agent:  Israel cortez          Phone:  (717) 795-2348

Agent Email:          Fax:

Policy Number:  Q545113294          Claim Number:  A00002568420          Deductible $:  0.00

Collected:

| 2913 | 04/26/2020 | 7:08 PM | Base | 4 | SurveyMaster | Non-Penetrating | Concrete | 74 |
|------|------------|---------|------|---|--------------|-----------------|----------|----|
| 2913 | 04/27/2020 | 6:24 PM | Base | 4 | SurveyMaster | Non-Penetrating | Concrete | 56 |
| 2913 | 04/28/2020 | 6:43 PM | Base | 4 | SurveyMaster | Non-Penetrating | Concrete | 32 |

DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615



### Water Mitigation Agreement

This Water Mitigation Agreement is between Roto-Rooter Services Company ("we," "us," or "our") and the customer signing below ("you" or "your") and relates to the property specified below (the "Property").

1. **Services and charges:** We will provide water extraction or mitigation services at the Property (the "Services") in accordance with a separate work order/invoice signed by you and us that specifies our services and charges. Our services will comply with standard industry practices, with such variations as we determine are appropriate. We will calculate our charges using industry specific software that is generally accepted by insurance carriers, such as Xactimate software, and will provide you or your insurance carrier a final itemized invoice at the completion of our work.

   The exact scope of the Services will vary depending on the circumstances but may include some or all of the following: extracting water from floor coverings and structures (such as drywall); removing irreparably damaged or contaminated materials; applying anti-microbial agents; drying floor coverings and structures using air movers or other equipment; cleaning air using air scrubbers; cleaning floors with standard steam extraction; and deodorizing. For purposes of determining equipment usage, a portion of a day constitutes a full day. We will use conventional water extraction/mitigation methods only. If we encounter hidden or unforeseen conditions that require additional work, we will promptly notify you, and you can decide whether to add work by a written change order.

2. **Limitations on our responsibilities:** We are not responsible for the following: hidden or unforeseen conditions or the consequences of such conditions; repairing or replacing property damaged by water; finding or repairing sources of water intrusion; problems caused in the future by water damage (including mold); detecting and addressing mold or mildew issues; personal injury or property damage arising from existing or future mold or mildew issues; losses from disposing of items exposed to contaminated water; loss or damage to valuable personal items you fail to remove as provided below; or any consequential damages or lost profits arising out of water damage or the Services.

   If we encounter hazardous substances, unsafe conditions, or mold, we may stop work, and you will pay us for the work performed based on our initial internal pricing calculations (prorated for partial performance). We are not obligated to perform mold remediation unless we specifically agree otherwise in a signed invoice/work order. Notwithstanding any such agreement concerning mold remediation, we do not warrant that all mold and mildew will be removed or destroyed or will never recur, and you acknowledge that the goal of mold remediation is to bring mold to normal levels, not create a "mold-free" environment. You authorize us to remove and dispose of any items exposed to grossly contaminated water that we conclude might contain pathogenic, toxigenic or other harmful agents, and you agree not to return those items to the Property. **Our liability to you for any claim arising out of the Services will in no event exceed three times the amount you actually pay us.**

3. **Your responsibilities:** You will give us access to the Property to perform the Services in the manner we deem appropriate and will limit access by others (including occupants and pets) to the job site to avoid exposing them to dangerous conditions. Before we commence work, you will remove personal items, including cash, jewelry, firearms, collectibles and any valuable items and will notify us of any known hazardous substances or unsafe conditions at the Property, including asbestos, chemicals and the like. You will not turn off, unplug or remove any drying equipment before the time we have specified and will not allow anyone else to do so. You will be responsible for any loss or damage to our equipment while on the Property, unless caused by our gross negligence.

   You release us from and agree to indemnify us and hold us harmless against any liability for personal injury, property damage or other damage or loss to you or others arising out of (a) our work, except to the extent caused by our gross negligence or breach of this agreement, or (b) hazardous substances or unsafe conditions at the Property (including mold or microbial growth of any sort).

4. **Insurance coverage:** You hereby assign to us all insurance rights, benefits and causes of action you have relating to our work and agree we may reassign those. You acknowledge that we now own your insurance claim to the extent we provide Services. You authorize us to deal directly with your insurance company and will do all things necessary for us to process the insurance claim. **There is no assurance that insurance coverage will be available to pay any of our charges, and you are ultimately responsible for paying us for the Services, whether or not you have insurance.** You represent that all information you provide us about your insurance coverage will be true and complete and authorize us to make all appropriate credit inquiries about you.

Page 1 of 2

Rev. 5/19



DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615

5. **Payment**: If you do not have insurance coverage or do not intend to file a claim with your carrier, you will pay us 50% of our estimated charges upon completion of the first day of work and the balance the day we complete the Services.

If you intend to file a claim with your insurance carrier, we will invoice them as a convenience to you, but you remain responsible for paying any amounts due, and we may demand full and final payment from you at any time. Unless we agree otherwise, you will pay us 50% of your deductible at the end of the day we start work and the remainder of your deductible the day we complete work. On the earlier of 10 days after you receive payment from your insurance carrier or 60 days after we complete the Services, you will pay us the remaining amount due.

You will pay interest on overdue amounts from the date due until paid at an annual rate equal to the lesser of 1.5% per month or the highest rate legally permissible. Unless prohibited by law, if we use a collection attorney or agency and prevail, you will pay us a collection fee equal to the greater of $100.00 or 25% of the balance due.

6. **Cessation of work**: If you breach this agreement or your insurance carrier indicates insurance coverage is not available, we may stop work and remove our equipment. In that case, you will pay us for the work performed based on our initial internal pricing calculations by line item (prorated for partial performance).

7. **Waiver of cancellation rights:** You acknowledge that (i) you initiated contact with us and requested specific services from us, and we did not engage in a personal solicitation of a sale to you, (ii) the Services are needed to meet a bona fide immediate personal emergency that will jeopardize the welfare, health, or safety of natural persons or endanger property you own or for which you are responsible, (iii) you are authorizing us to provide the Services without delay because of that emergency, (iv) some state or local laws allow consumers to cancel certain home improvement, repair or solicitation contracts within a short period of time after they are signed, such as three or seven business days, and (v) as an inducement to us to commence the Services without delay, to the extent permitted by law, **you hereby waive and agree not to exercise any such cancellation rights you may have under applicable law.**

8. **Miscellaneous**: You represent that you have read and understand this agreement and have full authority to enter into this agreement. This is the entire agreement between us and supersedes all prior oral or written agreements relating to the subject matter. It may not be modified or changed except by a written document signed by both parties. If any of the terms of this agreement are held invalid or unenforceable, the remaining provisions will not be affected and will continue to apply. Nothing in this agreement limits our right to seek damages for your breach of this agreement.

Customer company name (if applicable): _____

Your signature: _Karen Sandlop_   Print name: SCOTT BOYER   Date: 04/25/2020

---

**To be completed by customer at the time of signing:**

The address of the Property is: 3221 eisenbrown rd reading pa 19605

By signing above, you represent that you are [check one]: owner [X], tenant [ ], property manager [ ], or other (specify) _____ [ ] of the Property.

Your initials: _Wea_   By initialing here, you acknowledge that (i) we have not made any representations to you about whether your insurance will cover some or all of our charges, (ii) you are ultimately responsible for paying us for the Services, whether or not you have insurance, and (iii) under paragraph 7, you are waiving your cancellation rights.

---

**Roto-Rooter Services Company**

Our signature: _____   Print name: Robert Hannon   Date: 04/25/2020

Rev. 5/19



DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615



## Customer Equipment Responsibility Form

### (Instructions related to the cleanup of your property)

- **General:** Please do not open the windows. Please minimize entering the affected rooms. Do not allow children to play in or around operating drying equipment.

- **Dehumidifiers:** Dehumidifiers reduce the humidity, which in turn increases the rate of drying. Please do not turn off or move dehumidifiers.

- **Air movers:** Air movers are designed to increase the rate of evaporation, which in turn increases the rate of drying. Please do not move or turn off air movers.

- **Safety and Health:** If air movers or dehumidifiers must be moved, please notify a Roto-Rooter technician. The technician will move the equipment.

- **Equipment Responsibility:** By signing below the customer acknowledges and agrees that:
  - Roto-Rooter will leave equipment on premises as detailed in separate Equipment Log.
  - Roto-Rooter will leave equipment on the premises with extension cords and other devices that may impede walkways. Customer should avoid allowing people near the area in which the equipment or extension cords are present.
  - Customer is responsible for loss or theft of the equipment detailed below while the equipment is in their care and custody.
  - Customer will allow a company technician access to the property to monitor and remove equipment.
  - Customer will sign the Equipment Log any time equipment is added or removed from the premises.

**In the event of an emergency, please call our 24-hour phone #** 1-800-GET-ROTO .

I have read and understand the information above about equipment operation, equipment responsibility, and safety and health precautions. I understand that electrical usage will be higher during the drying period. This increased electrical usage may or may not be covered by my insurance company and I should consult with my insurance agent/adjuster with any questions regarding this increased electrical cost. I understand that increased electrical costs are NOT the responsibility of Roto-Rooter Services Company.

**Print Customer Name:** SCOTT BOYER                          **Date of Loss:** 04/25/2020

**Address:** 3221 EISENBROWN RD   READING, PA 19605-1409

**Signature:** Karen Sandlop                               **Date:** 04/25/2020
(Owner/Occupant)

Rev. 2/19

DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615

### Additional Information

The requirement to pay attorney's fees in Section 5.D. of the Water Extraction Agreement does not apply if the job exceeds $500 and is performed at a "private residence" as that term is defined in the Pennsylvania Home Improvement Consumer Protection Act.

The official registration number of Roto-Rooter in Pennsylvania can be obtained from the Pennsylvania Office of Attorney General's Bureau of Consumer Protection by calling toll-free within Pennsylvania 1-888-520-6680. Registration does not imply endorsement.

Roto-Rooter agrees to maintain liability insurance covering personal injury in an amount not less than $50,000 and insurance covering property damage caused by our work in an amount not less than $50,000. Roto-Rooter currently maintains both types of insurance in an amount of at least $50,000.

---

### NOTICE OF CANCELLATION

**You may cancel this transaction, without any penalty or obligation, within three business days from the date on this work order/invoice.**

**If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 business days following receipt by Roto-Rooter of your cancellation notice, and any security interest arising out of the transaction will be canceled.**

**If you cancel, you must make available to Roto-Rooter at your residence in substantially as good condition as when you received, any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of Roto-Rooter regarding the return shipment of the goods at Roto-Rooter's expense and risk.**

**If you do make the goods available to Roto-Rooter and Roto-Rooter does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to Roto-Rooter or if you agree to return the goods to Roto-Rooter and fail to do so, then you remain liable for the performance of all obligations under the contract.**

**To cancel this transaction, mail certified, return receipt requested, or deliver a signed and dated copy of this cancellation notice or any other written notice, no later than midnight of the third day following the date on this Work Order/Invoice to:**

**Roto-Rooter Services Company**

**I HEREBY CANCEL THIS TRANSACTION**

(Date) _____          (Customer's signature) _____



DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615



## WATER CLEANUP HEALTH CONDITIONS DISCLOSURE AND RELEASE

By my signature below, I authorize Roto-Rooter to perform water cleanup work on premises that I own or occupy. This document acknowledges special conditions that exist or decisions that I have made and my agreement to accept full responsibility and hold Roto-Rooter harmless for those special conditions or decisions. I further certify that I have the legal right to bind the property and the owner with my signature.

**INITIALS:**

_____**NO SPECIAL HEALTH CONDITIONS**

_____ **SPECIAL HEALTH CONDITIONS**

I, or someone occupying the premises at issue, or someone in my household, has/have known allergies to mold, dust, fungus or chemicals, respiratory problems, special sensitivities to chemicals, or other health conditions that may be adversely affected by the use of materials associated with appropriate restorative measures. I have disclosed such health conditions to representatives of Roto-Rooter and summarized the conditions below:

Person                                      Condition

_____/_____

_____/_____

_____ **NO CHEMICAL ANTIMICROBIALS TO BE USED**

After discussing above health conditions with Roto-Rooter, I agree that beyond the use of ordinary household cleaners and disinfectants, Roto-Rooter shall not apply mildewcides, fungicides or other antimicrobials to kill or inhibit growth of water-caused microorganisms. I accept sole responsibility for any adverse effects that may be caused by my decision and/or actions.

_____ **CHEMICAL ANTIMICROBIALS CAN BE USED**

After discussing above health conditions with Roto-Rooter, I agree that beyond the use of ordinary household cleaners and disinfectants, Roto-Rooter, at its discretion, may apply mildewcides, fungicides or other antimicrobials to kill or

Rev. 3/1/19

DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD815



Claim #  A00002568420

Roto-Rooter Services Company
1001 DAWSON DR
NEWARK, DE 19713
(302) 454-9854
Federal ID #  42 0499300

## DIRECT PAYMENT AUTHORIZATION

Customer Name:  SCOTT BOYER

Customer Address:  3221 EISENBROWN RD

City, State Zip:  READING, PA 19605-1409

I authorize Roto-Rooter to invoice my insurance carrier directly for Roto-Rooter's charges, and I authorize my insurance carrier to pay Roto-Rooter directly for such charges, including by a check made payable solely to Roto-Rooter.

I agree that I am responsible for paying Roto-Rooter any amounts not covered by insurance (whether as a result of an insurance deductible or otherwise), and I agree to pay Roto-Rooter any unpaid amounts on or before the earlier of ten days after I receive payment from my insurance carrier or sixty days after the date (determined by Roto-Rooter in its sole judgment) that Roto-Rooter completes its water extraction and structural drying services.

I authorize Roto-Rooter to (a) deposit into its bank account any check that it receives from my insurance carrier that is payable to me for Roto-Rooter's charges, commingle such funds in its accounts and retain or withdraw them, and (b) to endorse any such check on my behalf for deposit into Roto-Rooter's bank account or authorize third parties to do so.

If my insurance carrier issues a check that exceeds Roto-Rooter's charges, regardless of payee, I authorize Roto-Rooter to deposit the full amount of that check into its bank account, and I understand that Roto-Rooter will promptly reimburse me for the excess.

If my insurance carrier delivers a check to me for Roto-Rooter's charges, I will endorse the check as necessary and immediately deliver it to Roto-Rooter.

Company name (if applicable): 

Signature: Karen Sandloop    Print name: SCOTT BOYER

Date: 04/25/2020

Roto-Rooter Services Company

By:     Print name: Robert Hannon

Date: 04/25/2020

Rev. 12/19



DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615



Claim # A00002568420

**Roto-Rooter Services Company**
1001 DAWSON DR
NEWARK, DE 19713
(302) 454-9854
Federal Id # 42 0499300

## CERTIFICATION OF SATISFACTION

Customer Name: SCOTT BOYER

Customer Address: 3221 EISENBROWN RD

City, State Zip: READING, PA 19605-1409

I acknowledge that water extraction and structural drying services provided by Roto-Rooter at the above property have been completed to my satisfaction and that payment is now owed to Roto-Rooter.

I further certify that Roto-Rooter has furnished all labor and materials for the services as specified in the work order/invoice.

**Company name (if applicable):** _____

**Signature:** _____    **Print name:** SCOTT BOYER

**Date:** 04/28/2020

**Roto-Rooter Services Company**

**By:** _____    **Print name:** Dane Morris

**Date:** 04/28/2020

Rev. 2/6/19

DocuSign Envelope ID: 50D8DB4C-5971-41F3-8285-5D20332FD615

inhibit growth of water-caused microorganisms. I accept sole responsibility for any adverse effects that may be caused by my decision and/or actions.

Signature: _Karen Sandlöp_

Print name: SCOTT  BOYER

Date: 04/25/2020

Rev. 3/1/19

# ATTACHMENT